**In re John A. ROBERTS, Jr., Appellant,**

v.

**GLENN ROBERTS AND WIP, INC. f/k/a Producers International Corporation, Appellee.**

**In re John A. ROBERTS, Jr., Debtor.**

**GLENN ROBERTS AND WIP, INC. f/k/a Producers International Corporation, Plaintiff,**

v.

**John A. ROBERTS, Jr., Defendant.**

No. IP 96–290–C–T/G.

Bankruptcy No. 94–6306–RLB–7.

Adv. No. 94–473.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 19, 1996.

James M. Carr, Baker & Daniels, Indianapolis, IN, for Plaintiff.

Paula F. Cardoza, Jeffrey A. Hokanson, Ancel & Dunlap, Indianapolis, IN, for Defendant.

**Memorandum Entry Regarding Plaintiff's Appeal From a Decision of the Bankruptcy Court.**

TINDER, District Judge.

This matter comes before the court upon the Appeal of Plaintiff, Glenn Roberts and WIP, Inc., f/k/a/ Producers International Corporation, ("the Creditor"), from a decision of the United States Bankruptcy Court for the Southern District of Indiana granting partial summary judgment in favor Defendant, John A. Roberts, ("the Debtor"), on the question of whether attorneys' fees, and other costs and fees, awarded in a prior state court fraud action, are dischargeable debts within the meaning of section 523(a)(2)(B) of the Bankruptcy Code. The court, having considered the appeal and the supporting and opposing briefs, finds that the Bankruptcy Court's partial summary judgment in favor of the Debtor should be **REVERSED** for the reasons set forth below.

## I. Factual Background and Procedural History

Glenn Roberts, the creditor here, owned a business called Producers International, Inc. John Roberts, the Debtor, owned a company called Format, Inc. In March, 1991, Producers, International, Inc. and Format, Inc. began negotiations in which Format, Inc. agreed to purchase Producers, International, Inc. Format executed a Non–Competition Agreement in which Format agreed to pay the Creditor a total of $750,000, in seventy-one monthly installments of $10,500 each. In addition, John Roberts executed an Unconditional Guaranty in which he personally guaranteed Format's obligations under the Non–Competition Agreement. In connection with the sales transaction, the Debtor represented in writing that his personal net worth was more than $5 million. The Unconditional Guaranty contains the following provision:

Paragraph 14. Attorney's Fees; Expenses. Guarantor agrees to pay upon demand all of Roberts' costs and expenses, including attorneys' fees and legal ex-

penses, incurred in connection with any claim under this Guaranty. Costs and expenses include Roberts' attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all courts costs and such additional fees as may be directed by the court.

The Debtor defaulted on his obligations under the Guaranty. The Creditor filed suit in the Marion Superior Court, claiming, among other things, that the Debtor fraudulently represented his net worth. The Creditor won a state court judgment against the Debtor on the claim of fraud, and other claims. The state court judgment awarded the Creditor $655,500.00 in damages, $152,249.34 in prejudgment interest, $66,660.00 in late payment fees, and $186,961.75 in attorneys' fees and costs. Thereafter, the Debtor filed for bankruptcy under Chapter 7. The Creditor filed a complaint in the bankruptcy court seeking a determination that the state court judgment was not dischargeable in bankruptcy. The parties filed cross-motions for summary judgment. The bankruptcy court ruled that the state court judgment for $655,500.00 in damages was non-dischargeable, but that the award of attorneys' fees, interest, and late payment fees were dischargeable. The Creditor has appealed that ruling.[1]

## II. Analysis

■■■ A district court may set aside an order of a bankruptcy court where the district court determines that the bankruptcy court's findings are clearly erroneous and where due regard has been given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. FED. R.BANKR.P. 8013; see In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir.

1993). Factual findings cannot be disturbed " 'simply because [the district court] is convinced it would have decided the case differently.' " In re Weber, 892 F.2d 534, 538 (7th Cir.1989) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). However, questions of law are reviewed de novo. In re Wiredyne, Inc., 3 F.3d 1125, 1126 (7th Cir. 1993); In re Ebbler Furniture & Appliances, Inc., 804 F.2d 87, 89 (7th Cir.1986); see also Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir.1994).[2]

This case presents a narrow question of law. In Mayer v. Spanel Int'l Ltd., 51 F.3d 670, 677 (7th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995), the Seventh Circuit held, among other things, that "[a]ttorneys' fees provided by contract are part of the debt, and if the principal and (pre-bankruptcy) interest on the debt are nondischargeable, so are the other elements of the debt." The Creditor argues that this legal proposition controls the question of whether attorneys' fees and collection costs in this case are dischargeable, and that the bankruptcy court erred in not applying this rule of law. The Debtor argues that Field v. Mans, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) has abrogated Mayer, and that, therefore, the bankruptcy court correctly ruled that attorneys' fees are dischargeable. The court concludes that the Creditor has the better argument, because Field v. Mans has not disturbed the rule adopted in Mayer concerning the dischargeability of attorneys' fees. The court now turns to a discussion of that conclusion.

■■■ Section 523(a)(2) sets out two categories of debts that are nondischargeable in bankruptcy. Section 523(a)(2)(A) holds nondischargeable debts that are traceable to falsity or fraud. Section 523(a)(2)(B) holds nondischargeable debts that are traceable to a materially false financial statement. In

---

1. The Debtor withdrew his appeal of the bankruptcy court's determination that the state court judgment awarding damages was nondischargeable. Thus, the nondischargeability of that debt is not at issue in this appeal.

2. The Debtor argues that the court should apply the clearly erroneous standard because the bank-

ruptcy court's decision "entailed the application of a legal standard to arguably undisputed facts." Central States S.E. & S.W. Areas Pension Fund v. Slotky, 956 F.2d 1369, 1373 (7th Cir.1992). On appeal, however, the parties dispute the legal standard itself that the bankruptcy court applied. De novo review is thus appropriate.

*Field v. Mans,* the Supreme Court held that § 523(a)(2)(A) of the bankruptcy code requires that creditors establish only that they have "justifiably" relied on a false representation in order to exempt a debt from bankruptcy, unlike § 523(a)(2)(B), which requires creditors to establish the higher standard of "reasonable reliance." Thus, to the extent that *Mayer* articulated a different standard, *Mayer,* of course, is no longer good law.[3] But the court finds no basis in the *Field* analysis for questioning *Mayer's* subsidiary holding on the dischargeability of attorneys' fees. *Mayer's* conclusion that attorneys' fees provided by contract are part of the debt does not turn on the question of reliance addressed in *Field,* and *Field* itself does not address the question of whether, or under what circumstances, attorneys' fees are dischargeable. So, the court concludes that the rule adopted in *Mayer* concerning attorneys' fees remains the law of the Seventh Circuit, and that the bankruptcy court erred in not applying that law.[4]

The state court in this case awarded attorneys' fees and late fees on the basis of specific contract language.[5] Under *Mayer,* these obligations are part of the "debt," and are therefore nondischargeable.[6] Moreover, Seventh Circuit law provides an alternative basis for determining that these ancillary debts are non-dischargeable. In *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987), the Seventh Circuit held that "ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt." *Id.* at 1296. Under this theory, "a contractual or statutory basis for the award of attorneys' fees is not relevant." *Freer v. Weinstein (In re Weinstein),* 173 B.R. 258, 271 (Bankr.E.D.N.Y.1994). Under *Klingman,* then, the bankruptcy court's conclusion that the underlying debt is nondischargeable is also determinative.

■ The Debtor makes one final argument. The Debtor argues that the state-court litigation did not involve, properly speaking, an effort to collect a debt. In-

---

**3.** The court questions whether the principal holding in *Mayer* has indeed been abrogated. Though *Mayer* did not specifically repudiate the "reasonable reliance" language, it did hold that the level of reliance under § 523(a)(2)(A) need not be "reasonable" in the sense that it requires some sort of investigation on the part of the creditor. 51 F.3d at 675–76. Rather, the reliance element essentially "excludes recovery if the investor knows or suspects the truth. Reliance means the conjunction of a material misrepresentation with causation in fact." *Id.* at 676. This standard under section 523(a)(2)(A) essentially echoes the one set out in *Field. Field,* — U.S. at ——, 116 S.Ct. at 444 (stating that "a person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.")

**4.** The bankruptcy court, relying on *Sciscoe v. Leistner (In re Sciscoe),* 164 B.R. 86 (S.D.Ind. 1993) reasoned that attorneys' fees were not "obtained by" the debtor's fraud within the meaning of § 523(a)(2). Though there is some authority for this view, *see, e.g., Medley v. Owen (In re Owen),* 181 B.R. 288 (Bankr.W.D.Va.1995), the Seventh Circuit has not endorsed it. Rather, courts that have held that attorneys' fees and other costs of collection are non-dischargeable have approached the question through a broad reading of "debt," *see, e.g., TranSouth Fin. Corp. of Florida v. Johnson,* 931 F.2d 1505, 1506 (11th Cir.1991) (noting that "debt" is to be given a

broad reading for purposes of the Bankruptcy Code). That approach is implicit in *Mayer.*

The Debtor also makes much of Justice Ginsburg's concurrence in *Field* in which Justice Ginsburg expressed concerns over the unsettled causation issue in the case. *Field,* — U.S. at ——, 116 S.Ct. at 447 (Ginsburg, J., concurring). A close reading of *Field,* however, makes plain that Justice Ginsburg's concerns in that case were fact-specific. Footnote 2 of the Court's opinion notes the factual issue. In any event, the bankruptcy court in this case has already determined that the underlying debt here was "obtained by" fraud within the meaning of § 523(a)(2)(B).

**5.** The state court judge also awarded attorneys' fees pursuant to Ind.Code. 26–1–2–721, which permits the award of attorneys' fees if a plaintiff recovers a judgment in a suit based on fraud.

**6.** The Debtor argues that *Mayer* is distinguishable because in *Mayer* the Debtor borrowed from the creditor, and therefore clearly "obtained" funds within the meaning of § 523(a)(2). This argument goes to the nondischargeability of the underlying debt, an issue the Debtor chose not to appeal. Similarly, the distinction the Debtor seeks to make between the non-dischargeability elements of § 523(a)(2)(A) and § 523(a)(2)(B) is relevant only to a determination of the dischargeability of the underlying debt, an issue that the bankruptcy court has already decided.

stead, the Debtor argues, the Creditor incurred a substantial part of the attorneys' fees at issue in litigating cross-allegations of fraud.[7] The crux of the argument is that only a portion of the attorneys' fees ought to attach to the state-court award—that portion that goes to the collection of the debt. This argument falls of its own weight. The bankruptcy concluded that the Debtor "owe[s] the Creditor a debt based on fraud." (Entry on Mot. for Summ.J. at 18.) The bankruptcy court further determined that the whole of the state court award of damages was nondischargeable. The Debtor did not argue below that the damages award should be apportioned between the various counts of the state court complaint, and that argument would be even less availing in this context as Counts I and Counts II of the state-court complaint are, properly speaking, collection claims.[8] Finally, the Debtor reads the rule in *Mayer* too narrowly. The specific contract language in *Mayer* provided for attorneys' fees incident to collection. *See Spanel Int'l Ltd. v. Mayer*, 164 B.R. 83, 85 (N.D.Ill. 1994), *aff'd*, 51 F.3d 670 (7th Cir.1995). Thus, if *Mayer* imposes a limitation on the nondischargeability of attorneys' fees to those incurred in collection, that limitation comes from the specific contract language in *Mayer*. In any event, the contract language in the Guaranty in this case provides for award of attorneys' fees and costs "incurred in connection with any claim" under the Guaranty. Furthermore, as noted above, there are at least two other bases for holding the ancillary obligations in this case nondischargeable.

### CONCLUSION

For all the above reasons, the bankruptcy court's partial summary judgment in favor of the Debtor is **REVERSED**. The court re-

mands the case to the bankruptcy court with direction to enter summary judgment in favor of the Creditor, and to consider the Creditor's argument, raised below, that interest on a nondischargeable debt continues to accrue postpetition.

ALL OF WHICH IS ORDERED.

---

7. The Creditor argues that the Debtor has waived this argument because the Debtor never argued below that a dispute of fact existed on this issue. Arguments not raised in the lower court are waived on appeal. *See, e.g., Citizens Ins. Co. of America v. Barton*, 39 F.3d 826 (7th Cir.1994). The Debtor did, however, raise this argument in substance, even if he did not properly label it as a dispute of material fact. *See, e.g., Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095 (7th Cir.1991). Nevertheless, the court determines that the argument fails as a matter of law.

8. The bankruptcy court determined that collateral estoppel should apply to the state court judgment, and the parties on appeal have not challenged that determination. Similarly, "the amount and reasonableness of attorneys' fees, expenses and costs assessed against Debtor constitutes a segment of a final judgment which Debtor is collaterally estopped from disputing." *In Re Weinstein*, 173 B.R. at 278, and cases cited.